775 So.2d 411 (2001)
Wilbert FLEURIDOR, Appellant,
v.
SURF CAFÉ and Jeffrey Todd Bouchard, Appellees.
No. 4D00-880.
District Court of Appeal of Florida, Fourth District.
January 3, 2001.
Steven Warm, Boca Raton, for appellant.
Shelley H. Leinicke of Wicker, Smith Tutan, O'Hara, McCoy, Graham & Ford, P.A., Fort Lauderdale, for Appellee Surf Café.
STONE, J.
We affirm summary judgment in favor of Surf Café as there was insufficient evidence to support the allegation that Surf Café knowingly served a person habitually addicted to alcohol.
The undisputed facts reflect that after leaving a party, at which he drank about three beers, Bouchard and a group of about twelve people went to the Surf Café. Bouchard was there for two or three hours and consumed about five drinks. He purchased only three or four of the drinks directly from the bartender. It is undisputed that Bouchard walked and spoke normally and showed no signs of intoxication. He shot pool, played foosball, and threw darts.
While driving home, Bouchard's vehicle collided with the vehicle driven by Fleuridor. Subsequent tests showed that Bouchard's blood alcohol level was over the legal limit. Fleuridor asserts that Surf Café is liable for Fleuridor's injuries because it served a person it knew or should have known was habitually addicted to alcohol.
There is evidence that Bouchard was not a habitual drunkard. He testified that he does not drink during the week and typically goes out for a drink after work about three Saturdays a month. He testified that the last time he had a drink was the Sunday prior to his deposition, at which *412 time he had one beer during lunch. Prior to this incident, he had never received counseling for alcohol abuse or been requested to do so by anyone. Bouchard had been to the Surf Café only two or three times, the last being six months prior to the accident. He was not a regular at the bar and knew none of the bartenders by name.
Fleuridor's only claimed evidence that Surf Café knew Bouchard was habitually addicted is found in two affidavits filed in opposition to Surf Café's motion. The first, filed by Fleuridor's attorney, attests to the contents of the probable cause affidavit filed in connection with Bouchard's DUI in this incident. It stated that the officer at the scene of the accident said that Bouchard's speech was slurred, he was having trouble maintaining his balance, and he admitted that the accident was his fault. This affidavit also attests to an allegation made by Bouchard's ex-girlfriend, claiming that seventeen months after the accident, Bouchard was drinking when he became violent in a domestic dispute over their child.
Fleuridor had experience as a bartender and opined in a second affidavit that:
In my training and in my experience there are limits to when you serve a customer. We are taught to look for certain indications that the customer is inebriated.... By no later than the fifth or sixth drink you can generally detect a change in the customer's complexion, slowness or awkwardness of movement, differences in speech and a general casualness that signals the onset of inebriation. Every once in a while, in my experience, someone appears able to absorb much greater quantities than the average without exhibiting to any great degree the familiar symptoms of intoxication. This is almost invariably an indication to the bartender that the customer is very accustomed to consuming large quantities of alcoholic beverage and has learned to handle them with minimal overt change, i.e., the customer is an alcoholic and is habitually given to maintaining an alcohol level in his system.
... I was taught and it is general practice, despite the lack of extreme symptoms, to cut the customer off for his safety and the safety of others.
Section 768.125, Florida Statutes, provides
A person who sells or furnishes alcoholic beverages to a person of lawful drinking age shall not thereby become liable for injury or damage caused by or resulting from the intoxication of such person, except that a person ... who knowingly serves a person habitually addicted to the use of any or all alcoholic beverages may become liable for injury or damage caused by or resulting from the intoxication of such ... person.
Knowledge may be proved through circumstantial evidence. Ellis v.. N.G.N. of Tampa, Inc., 586 So.2d 1042, 1048 (Fla. 1991). In Ellis, the court recognized that:
[s]erving an individual multiple drinks on one occasion would be insufficient, in and of itself, to establish that the vendor knowingly served a habitual drunkard alcoholic beverages. On the other hand, serving an individual a substantial number of drinks on multiple occasions would be circumstantial evidence to be considered by the jury in determining whether the vendor knew that the person was a habitual drunkard.
Id.
We have considered Roster v. Moulton, 602 So.2d 975 (Fla. 4th DCA 1992), and deem it distinguishable. In Roster, a bicyclist injured by a drunk driver sued the bar that served him. The evidence showed that the driver consumed eight to twelve beers and two shots of tequila in one and a half hours, left the bar, and returned to the bar's walk-up window, where he was served another beer. He did not stagger or slur his speech, and the bar's manager admitted that it was unusual for a person to consume that much alcohol and not show signs of intoxication. Id. at 975-76. The driver admitted that he *413 had a drinking problem since he was sixteen, and two expert witness affidavits stated that the large amount of alcohol consumed over a short period of time, together with the lack of impairment demonstrated by the driver, would have put a reasonable server on notice that the driver was habitually addicted to alcohol. Id. at 976, fn. 2. Thus, this court reversed summary judgment in favor of the bar, finding that the evidence created an issue of fact for a jury. Id. We do not consider these circumstances analogous.
In Russo v. Plant City Moose Lodge No. 1668, 656 So.2d 957 (Fla. 2d DCA 1995), relied on by the trial court, a woman sued the Moose Lodge that served the drunk driver who struck and killed her husband. The driver regularly socialized at the lodge; however, no one familiar with his drinking habits said he exhibited signs of habitual addiction to alcohol. His wife and friends also testified that he did not have a drinking problem or a reputation as such, and friend and bartender estimates of how often he visited the bar and how many beers he typically consumed ranged from two to eight visits per month and three to seven beers per visit. The driver testified that he did not have a drinking problem, and the court found his inconsistent practice of accepting and rejecting rides after he had been drinking to reveal nothing more than his lack of good judgment at times. Id. at 958-59. The court did not find this evidence as compelling as that in Roster and affirmed summary judgment in favor of the lodge. Id. at 959. It distinguished Roster by pointing out that Roster included two expert witness affidavits stating that the behavior exhibited by the driver would have put the vendor on notice and that the driver admitted to being an alcoholic. Id. at 958.
The fact that the Surf Café bartender served Bouchard three or four drinks and that Bouchard did not appear intoxicated, alone, is insufficient to prove that Surf Café knowingly served a habitual drunkard. Further, there is no evidence to contradict Bouchard's testimony that he was not habitually addicted and typically drinks only three times per month. He has never received counseling,[1] and no one has ever suggested that he do so. He was not a regular at Surf Café, he was unknown to its staff, and on the few occasions he had gone there, he did not get intoxicated. The bartender had no reason to believe he was intoxicated or that he was habitually addicted to alcohol. Bouchard purchased, at most, four drinks from the bartender over a two- to three-hour period. The bartender did not know that others in his party had purchased him additional drinks, nor did he know Bouchard had consumed three beers before coming to the Surf Café.
Fleuridor's suggestion that the allegations made by Bouchard's ex-girlfriend show that he is an alcoholic is essentially irrelevant, since the incident to which she made allegations occurred almost one and a half years after the accident and does not suggest that Bouchard was a habitual drunkard at the time in question. The trial court was also free to reject Fleuridor's own assertion that Bouchard's lack of impairment proves he is a habitual drunkard where the remaining evidence does not suggest that such is the case.
We find nothing in Roster to indicate that the act of serving multiple drinks to an anonymous patron on one occasion is, alone, sufficient to meet the statutory criteria. To so hold would be inconsistent with the Ellis court's conclusion that "[s]erving an individual multiple drinks on one occasion [is] insufficient, in and of itself, to establish that [a] vendor knowingly served a habitual drunkard...." Ellis, 586 So.2d at 1048 (emphasis added).
Therefore, the judgment is affirmed.
SHAHOOD and HAZOURI, JJ., concur.
NOTES
[1] He was required to get counseling in connection with the DUI charge in this incident.