Steven ROIG, Plaintiff,

v.

**MIAMI FEDERAL CREDIT UNION, Defendant.**

No. 04–21093–CIV–KING.

United States District Court, S.D. Florida, Miami Division.

Jan. 25, 2005.

Steven Roig, Miami, FL, Pro se.

Michael Paul Bennett, Neil McGuinness, Bennett Aiello Henry & McGuinness, Miami, FL, for Defendant.

## SUMMARY JUDGMENT

KING, District Judge.

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (DE # 12), filed December 30, 2004.[1]

## I. BACKGROUND

Defendant, Miami Federal Credit Union, is a federal financial institution, which provides members with savings and checking accounts, certain types of loans, and other banking services. At all relevant times, Defendant operated branch offices in Miami, Doral, Plantation and Fort Lauderdale, Florida. Plaintiff, Steven Roig, was employed by Defendant from June, 1995 until December, 2001, when he was terminated. Plaintiff was initially hired as a bank teller; was promoted to the position of loan processor about a year and a half later in either 1996 or 1997; and ultimately served as a relief branch manager. In that capacity, Plaintiff opened up branch offices for daily business, set up the banks, performed teller work, issued loans, and acted as a money carrier. Plaintiff was at all relevant times an alcoholic (and/or a recovering alcoholic).

Plaintiff claims that Defendant terminated him, in violation of the American's With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq., because he is an alcoholic. It is undisputed that Plaintiff is an alcoholic; Defendant knew Plaintiff was an alcoholic; Plaintiff was disciplined by Defendant on several occasions for absenteeism related to Plaintiff's alcoholism; and Plaintiff received (at least limited) successful treatment for his alcoholism. Defendant states, however, that Plaintiff's termination was not due to his status as an alcoholic but rather his unexcused absence from work during the week of Monday, December 17, 2001 to Friday, December 21, 2001.[2] In the instant motion, Defendant moves for summary judgment under two theories: (1) Plaintiff cannot establish a prime facie case of disability discrimination because Plaintiff is not a "qualified individual" under the ADA; and (2) Defendant had a valid, non-discriminatory reason for terminating Plaintiff, namely, Defendant's unexcused absence from work.

1. On January 13, 2005, Plaintiff filed his Response.

2. Plaintiff disputes that his absenteeism was unexcused and claims that Defendant was repeatedly given notice and eventually a medical note that Plaintiff's doctor instructed him not to attend work because of a back injury. Plaintiff claims that Defendant's assertions to the contrary are false. (Pl.'s Resp. at 9–10.)

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only where it is shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no requirement that the trial judge make findings of fact. *Id.* at 251, 106 S.Ct. 2505.

The party seeking summary judgment always bears the initial burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993). If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exists. *Hairston*, 9 F.3d at 918. To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the court should refuse to grant summary judgment. *Hairston*, 9 F.3d at 919.

## III.  DISCUSSION

The ADA prohibits employment discrimination against a "qualified individual with a disability because of the disability of such individual ...." 42 U.S.C. § 12112(a). In order to establish a *prime facie* case of employment discrimination under the ADA, a plaintiff must demonstrate: (1) that he has a disability, or was perceived to have a disability; (2) that he is qualified for the position with or without reasonable accommodations; and (3) that he was unlawfully discriminated against due to the disability. *Id.; Rossbach v. City of Miami*, 371 F.3d 1354, 1358–59 (11th Cir.2004); *Carruthers v. BSA Adver., Inc.* 357 F.3d 1213, 1215 (11th Cir.2004). The ADA defines the essential element of the first prong, "disability," to include: (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" and "a record of such impairment;" or (2) "being regarded as having such an impairment." 42 U.S.C. § 12112(a). Courts must conduct a carefully individualized inquiry into a plaintiff's claimed disability in order to fulfill their "statutory obligation to determine the existence of disabilities on a case-by-case basis." *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999); *see also Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (holding that plaintiffs' a-symptomatic HIV infection constituted a disability with the protection of the ADA but rejecting attempt to create HIV as a *per se* disability). In the instant case, Plaintiff argues that he satisfies both of the ADA definitions of disability because he (1) *is* disabled with a record of such impairment and (2) Defendant *regarded* him as disabled.

### A.  *Plaintiff cannot establish that he has an actual disability*

Establishing an actual disability, the first possible manner to establish an ADA disability, involves a three-step analysis. *Bragdon v. Abbott*, 524 U.S. 624, 631, 118

S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, a plaintiff must demonstrate that he is impaired. *Rossbach,* 371 F.3d at 1357 Second, a plaintiff must identify the life activity that is impaired and demonstrate that it is a "major life activity" under the ADA. *Id.* A major life activity includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(J)(2)(ii); *Rossbach,* 371 F.3d at 1357. "If not contained within these exemplars, the activity must be 'significant' to everyday life." *Rossbach,* 371 F.3d at 1357 (citing *Bragdon,* 524 U.S. at 638, 118 S.Ct. 2196). "Finally, a plaintiff must show that the impairment 'substantially limits' that life activity." *Id.* Substantially limits is a severe standard and must include permanent or long-term restrictions on performance of the life activity. *Toyota Motor Mfg., Ky. Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

■ While some courts have found that alcoholism can, in certain narrow cases, constitute a "disability" under the ADA,[3] Plaintiff fails to present sufficient evidence to pass an individualized assessment in his case. Plaintiff presents no evidence that his alcoholism substantially impaired him from participating in any major life activity. Instead of offering evidence that Plaintiff's alcoholism permanently altered his ability to care for himself, perform manual tasks, walk, see, hear, speak properly, breath, or work in some specifically identified class of jobs, Plaintiff offers only the evidence that he "had to be sent home in the middle of the days on numerous occasions because of the side effects of medication . . . ." (Pl.'s Resp. at 3.) On the other hand, when asked by Defendant's counsel whether "there was anything that you could not do because of treatment or the alcoholism[,]" Plaintiff succinctly respond, "[n]o." (Def.'s St. of Facts at 6:21; Pl.'s Dep. At 77:12–15.) Plaintiff's wife's testimony was similar:

> Q. But to your knowledge and your observations, and during the time that you have seen him and known him, you have not observed any impairment of a major life activity such as walking or seeing or breathing or working or caring for himself or anything like that; is that correct?
>
> A. Correct.

(Def.'s St. of Facts at 8:31; Antonine Roig Depo. at 37:14–20)

**B.** *Plaintiff cannot establish that Defendant regarded him as disabled*

"Under the 'regarded as' disabled [test], a person is 'disabled' if her employer perceives her as having an ADA-qualifying disability, even if there is no factual basis for that perception." *Carruthers,* 357 F.3d at 1216 (citing *Williams v. Motorola, Inc.,* 303 F.3d 1284, 1290 (11th Cir.2002)). Importantly, however, "[a]s with actual im-

---

**3.** *See, e.g., Williams v. Anheuser–Busch, Inc.,* 957 F.Supp. 1246, 1249 (M.D.Fla.1997) (holding that plaintiff established a *prime facie* case of disability from evidence that plaintiff's addiction "caused [plaintiff] to miss work, suffer numerous blackouts, and incur significant short term memory impairment"), *Burch v. Coca–Cola Co.,* 119 F.3d 305, 316 n. 9 (5th Cir.1997) (holding that in certain circumstances an alcoholic could establish he was disabled under the ADA). Of course, an alcoholic employee can be held to the "same qualification standards for employment or job performance and behavior" as other employees are held, "even if any unsatisfactory performance or behavior is related to the . . . alcoholism of such employee." 42 U.S.C. § 12114(c)(4); *see Maddox v. Univ. of Tenn.,* 62 F.3d 843, 847 (6th Cir.1995) (holding that an alcoholic assistant football coach, who was fired after driving while intoxicated and claimed that his conduct resulted from his disability, could be held to the same performance and behavior standards as other employees even if the conduct was related to his alcoholism).

pairments ... the perceived impairment must be one that, if real, would limit substantially a major life activity of the individual." *Id.* In *Carruthers,* an employer terminated a plaintiff after she was diagnosed with a bilateral hand strain/sprain, which rendered the plaintiff unable to perform the basic tasks of her position. The Eleventh Circuit held that the defendant employer did not regard her has being permanently impaired from performing either a class of jobs or a broad range of jobs in various classes because the defendant offered to review its staffing situation when plaintiff was ready to work. *Id.* at 1217.

 In the instant case, Defendant has offered evidence that they did not regard Plaintiff as disabled within the meaning of the ADA. It is undisputed that Defendant knew of Plaintiff's alcoholism early in Plaintiff's employment, but kept Plaintiff salaried after repeated incidences of alcohol-related problems and even promoted Plaintiff on two separate occasions. Moreover, Plaintiff's termination letter makes it clear the Defendant did not regard Plaintiff as permanently impaired from performing any major life activities. Defendant's CEO stated in the termination letter that:

> We believe that you have the potential to do a capable job but your unexpected absences have caused problems for [Defendant.]
>
> Perhaps you should seek a job that is less demanding, one where your attendance is not imperative as it is with the [Defendant]. I am confident that you will find a position more suited to your situation.

(Def.'s Stat. of Facts at Tab 6.) Clearly, Defendant's CEO did not believe that Plaintiff was disabled or unable to perform in the workplace. While Defendant knew that Plaintiff was an alcoholic, Plaintiff presents no evidence that Defendant regarded him as substantially impaired within the meaning of the ADA.

## IV. CONCLUSION

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, GRANTED and the case is DISMISSED.